Sameer Rastogi, Esq. (SR-5249)
SICHENZIA ROSS FRIEDMAN FERENCE LLP
61 Broadway, 32nd Floor
New York, New York 10006
Telephone: (212) 930-9700
Facsimile: (212) 930-9725
Email: srastogi@srff.com



14 CV 9878

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
RICHARD L. SMITHLINE and                                    :     Case No.
MIDSUMMER SMALL CAP MASTER, LTD.,                           :
                                                            :     JUDGE SCHOFIELD
                        Plaintiffs,                         :
                                                            :
        - against -                                         :     **COMPLAINT**
                                                            :
REAL GOODS SOLAR, INC., KAMYAR MOFID, :
ANTHONY DIPAOLO, DENNIS LACEY,                              :
DAVID BELLUCK, PAVEL BOUSKA,                                :     **JURY DEMANDED**
IAN BOWLES, STEVEN KAUFMAN, JOHN                            :
SCHAEFFER, ROBERT L. SCOTT and                              :
RICHARD D. WHITE,                                           :
                                                            :
                        Defendants.                         :
------------------------------------------------------------x

        Plaintiffs Richard L. Smithline and Midsummer Small Cap Master, Ltd., by and

through their attorneys, Sichenzia Ross Friedman Ference LLP, allege as and for their

Complaint against Defendants Real Goods Solar, Inc., Kamyar Mofid, Anthony DiPaolo,

Dennis Lacey, David Belluck, Pavel Bouska, Ian Bowles, Steven Kaufman, John

Schaeffer, Robert L. Scott and Richard D. White, as follows:

## NATURE OF THE ACTION

        1.      Plaintiffs seek compensatory damages and attorney's fees in connection

with Defendants' sale of common stock and warrants in the Real Good Solar, Inc.

("RGS" or the "Company") private placement ("Private Placement") that closed on or

about July 9, 2014.  As evidenced by its second quarter SEC filings, Defendants knew, at the time that the Private Placement closed, of various material adverse events, both financial and operational, and despite clear contractual obligations, failed to disclose them to Plaintiffs.

2.       Instead of disclosing significant various operational and financial events, cash-strapped and in need of liquidity, Defendants misrepresented the results of operations, state of the business, liquidity, financial condition, profitability, solvency, and prospects of RGS, leading to a misleading impression as to its business and the value of its stock that Plaintiffs relied upon to their detriment in their decision to invest in the Private Placement.

## JURISDICTION AND VENUE

3.       This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C § 1332 because Plaintiffs and Defendants are citizens of different states and Plaintiffs seek damages in excess of $75,000.

4.       Venue is proper in this District because Defendants have consented thereto pursuant to the Securities Purchase Agreement, dated as of July 2, 2014, by and among RGS and the investors listed on Annex A thereto (the "Securities Purchase Agreement").

## PARTIES

5.       Plaintiff Richard L. Smithline ("Smithline") is an individual residing at 4 Puritan Road, Rye, New York 10580.

6.       Plaintiff Midsummer Small Cap Master, Ltd. ("Midsummer") is a corporation organized and existing under the laws of Bermuda with its principal place of business located at 747 Third Avenue, 26th Floor, New York, New York 10017.

7.      Defendants Real Goods Solar, Inc. is a Colorado corporation with its principal place of business located at 833 West South Boulder Road, Louisville, Colorado 80027.  As a public company, RGS files, and during the period at issue, filed periodic reports, including Forms 10-Q and 8-K, with the SEC pursuant to § 13(a) of the Exchange Act and SEC Rules.

8.      Defendant Kamyar Mofid is the former Chief Executive Officer of Real Goods Solar, Inc., and upon information and belief, is a resident of Colorado.

9.      Defendant Anthony DiPaolo is the former Chief Financial Officer of Real Goods Solar, Inc., and upon information and belief, is a resident of California.

10.      Defendant Dennis Lacey is RGS's Chief Executive Officer and a Director, and upon information and belief, is a resident of Colorado.

11.      Defendants David Belluck is the Chairman of RGS's Board of Directors, and upon information and belief, is a resident of California.

12.      Defendant Pavel Bouska is a Director, and upon information and belief, is a resident of Colorado.

13.      Defendant Ian Bowles is a Director, and upon information and belief, is a resident of Massachusetts.

14.      Defendant Steven Kaufman is a Director, and upon information and belief, is a resident of Massachusetts.

15.      Defendant John Schaeffer is a Director, and upon information and belief, is a resident of Colorado.

16.      Defendant Robert L. Scott is a Director, and upon information and belief, is a resident of Colorado.

17.     Richard D. White is a Director, and upon information and belief, is a resident of Indiana.

## FACTS COMMON TO ALL CLAIMS

**The July 9, 2014 Private Placement**

18.     On July 9, 2014, in the Private Placement, RGS issued 2,919,301 shares, and warrants to purchase up to 1,313,686 additional shares, of its Class A common stock for net proceeds of approximately $6.4 million.  The individual defendants approved the Securities Purchase Agreement and the representations and warranties contained therein. Notably, the Private Placement was supposed to be $15 million as disclosed in the Powerpoint presentation circulated to Plaintiffs; however, RGS was unable to raise the full amount.

19.     Relying on the (i) accuracy and completeness of the publicly disclosed information about RGS; (ii) Powerpoint presentation regarding RGS; and (iii) the representations and warranties of RGS contained in the Securities Purchase Agreement and made by management, Plaintiff Richard L. Smithline invested $150,000 in the Private Placement for 62,500 shares and warrants to purchase up to 28,125 shares of Defendants' Class A common stock.

20.     Relying on the (i) accuracy and completeness of the publicly disclosed information about RGS; (ii) Powerpoint presentation made by management; and (iii) the representations and warranties of RGS contained in the Securities Purchase Agreement and made by management, Plaintiff Midsummer invested $550,000 in the Private Placement for 229,167 shares and warrants to purchase up to 103,125 shares of Defendants' Class A common stock.

**Press Releases, Powerpoint Presentation, Meeting and/or Telephone
Conversation with RGS Management**

21.     In a press release dated May 14, 2014 from RGS, Defendant Kamyar Mofid stated "the residential business is now starting to perform well driving significant growth and capturing market share... On the commercial front, the first quarter was challenging as we... worked through a particularly harsh North East winter... we look forward to much **stronger commercial performance in the second half of the year**...We expect our acquisitions and investments ...to position us well for **accelerated growth and performance improvements in 2014 and beyond."**

22.     In or around June 2014, prior to Plaintiffs' investments in the Private Placement, on behalf of Defendants, RGS's investment banker provided a Powerpoint presentation dated June 2014 (the "Powerpoint Presentation") to Plaintiffs regarding RGS.

23.     In the Powerpoint Presentation, Defendants represented to Plaintiffs that as of March 31, 2014, *RGS had $11.1 million in cash and $14.5 million in working capital and no money was drawn on its line of credit.*

24.     In the Company's quarterly filing with the Securities and Exchange Commission (the "SEC") before the closing of the Private Placement, i.e., the Company's quarterly report on Form 10-Q for the quarter ended March 31, 2014, the Company stated "organic growth... as well as revenues associated with the acquisition of Mercury Energy, Inc., combined with reductions in operating expenses will **reduce future losses**."

25.     The Powerpoint Presentation also emphasized a positive outlook concerning the RGS's commercial business segment, comprising 50% of its revenues referring to the *"Impeccable Credentials of Commercial Business Unit."*

26.     Shortly thereafter the commercial business was to be significantly deemphasized and in a September 30, 2014 press release, Defendants represented in a press release that it will fully exit the "large commercial market."

27.     Regarding RGS's general financial health, Defendants further represented in the Powerpoint Presentation that "Over the past 12+ months, management has executed three corporate-wide initiatives, **setting the stage for expected profitable growth."**

28.     On or around June 26, 2014, echoing the Company's May 14, 2014 press release, Defendants' management including, but not limited to, Defendant Mofid orally represented to Smithline during a phone conversation that after a tough fourth and first quarter due to a harsh winter, RGS would bounce back, and experience major financial improvements, in the second quarter and that business would thrive in the back half of the year.

29.     Similar representations were made to the principals of Midsummer in a meeting on or around such date.

30.     These disclosures provided a materially false picture of RGS's business as of June 30, 2014, as evidenced by its second quarter SEC filings which were filed on August 19, 2014.

**The August 19, 2014**
**10-Q and 8-K SEC Filings**

31.     On or about August 19, 2014, RGS filed its second quarter Form 10-Q for the quarter ending June 30, 2014 and a Form 8-K.  These filings disclosed various significant and costly operational and financial issues taking place in the second quarter

of 2014, i.e., prior to the closing of the Private Placement, including, but not limited to, the following:

    a.        Defendants disclosed an increase in *operating losses in excess of $28.4 million for the three months ended June 30, 2014*.

    b.        By way of comparison, in the Form 10-Q filed May 15, 2014, disclosed *operating losses of only $9.9 million during the three months ended March 31, 2014*.

    c.        Defendants disclosed impairment of goodwill and other *asset impairment in excess of $18.8 million*.

    d.        Defendants disclosed a cash balance of *only $1.7 million as of June 30, 2014*.

    e.        Defendants disclosed negative margins on RGS's commercial segment as gross profit *decreased 153.4%,* or $1.8 million, to $(0.6) million or *(4.1)%* of net revenue during the three months ended June 30, 2014 from *13.6%*, or $1.2 million, of net revenue during the three months ended June 30, 2013.

    f.        Defendants disclosed in excess of *$21.8 of losses from operations in the commercial segment* for the three months ended June 30, 2013.

    g.        Defendants disclosed that RGS's headcount was *reduced by 19%* from April 2014.

    h.        Defendants disclosed the *resignation and replacement of RGS's Chief Executive Officer*, Defendant Kamyar Mofid.

i.  Defendants disclosed *$3 million borrowings* under its line of credit. By way of comparison, in the Form 10-Q for quarter ending March 31, 2014, Defendants previously represented that growth will reduce future losses and as of March 31, 2014, RGS had no outstanding borrowings under its revolving line of credit.

j.  Defendants disclosed that total *current liabilities increased to $40.6 million* from approximately $30.5 million reported in the Form 10-Q for the first quarter closing at March 31, 2014.

k.  Defendants disclosed the Company was in *default under its obligations with Silicon Valley Bank* as of June 30, 2014 which enabled the bank to require its indebtedness to be repaid and to exercise its rights with respect to the collateral securing its loan.

**Developments Subsequent to the
<u>Second Quarter SEC Filings</u>**

32.     To mitigate his losses after the disclosure of RGS's numerous adverse operational and financial events, Plaintiff Smithline sold all his shares of Defendants' Class A common stock, for a net loss of approximately $87,972.

33.     To mitigate its losses, Plaintiff Midsummer sold all their shares of Defendants' Class A common stock, for a net loss of approximately $84,802.

34.     Significantly, RGS's stock traded around $2.90 on July 2, 2014, the day RGS provided Plaintiffs with the final Securities Purchase Agreement, and the agreement was executed between Plaintiffs and Defendants in connection with the Private Placement.

35.     As a result of the disclosures in Defendants' second quarter SEC filings, the price of RGS's stock dropped from $2.51 on July 9, 2014 (the price on the date of the Private Placement's closing) to $1.84 on August 20, 2014 (the day after RGS's second quarter Form 10-Q was filed).

36.     The stock closed at around $0.57 on December 8, 2014.

37.     In or around October 2014, RGS's Chief Financial Officer, Defendant Anthony DiPaolo, resigned from RGS.

38.     On or about November 19, 2014, to raise badly needed cash, the Company announced that it was selling a portion of its business to Defendant John Schaeffer, a member of its Board of Directors, for $1.0 million.

**Representations and Warranties in the Securities**
**<u>Purchase Agreement Breached and Ignored by Defendants</u>**

39.     In or around July 2014, in connection with the Private Placement, Plaintiffs entered into the Securities Purchase Agreement with RGS.  In the Securities Purchase Agreement, the Company  made representations and warranties as follows:

a.     In Section 3.1(j)(i) of the Securities Purchase Agreement, the Company  represented and warranted that "Since **the date of the latest audited financial statements included within the SEC Reports, expect as specifically disclosed in the SEC Reports there has been no event, occurrence or development that has had or that would reasonably be expected to result in a Material Adverse Effect."**

b.     The Securities Purchase Agreement defined "Material Adverse Effect," in relevant part, as "a material and adverse effect on the

results of operations, assets, business or condition (financial or otherwise) of the Company and the Subsidiaries, taken as a whole."

c.      In Section 3.1(j)(ii) of the Securities Purchase Agreement, the Company represented and warranted that "**neither the Company nor any Subsidiary has incurred any liabilities (direct, indirect, contingent, or otherwise) other than (A) trade payables, accrued expenses and other liabilities incurred in the ordinary course of business consistent with past practice and (B) liabilities not required to be reflected in the Company's financial statements pursuant to GAAP or required to be disclosed in filings made with the Commission."**

d.      In Section 3.1(ff) of the Securities Purchase Agreement, the Company represented and warranted **that all disclosure provided "by or on behalf of the Company . . . are true and correct in all material respects and do not contain any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made therein, in light of the circumstances under which they were made, not misleading."**

e.      In Section 3.1(t) of the Securities Purchase Agreement, in the section headed "Solvency," the Company represented and warranted that:

"**Based on the financial condition of the Company as of the Closing Date (and assuming that the Closing shall have occurred), (i) the Company's fair saleable value of its assets exceeds the amount that will be required to be paid on or in respect of the Company's existing debts and other liabilities (including known contingent liabilities) as they mature, (ii)**

**the Company's assets do not constitute unreasonably small capital to carry on its business for the current fiscal year as now conducted and as proposed to be conducted including its capital needs taking into account the particular capital requirements of the business conducted by the Company, and projected capital requirements and capital availability thereof, and (iii) the current cash flow of the Company, together with the proceeds the Company would receive, were it to liquidate all of its assets, after taking into account all anticipated uses of the cash, would be sufficient to pay all amounts on or in respect of its debt when such amounts are required to be paid. The Company does not intend to incur debts beyond its ability to pay such debts as they mature (taking into account the timing and amounts of cash to be payable on or in respect of its debt).**

f.       In Section 3.1(m)(i) of the Securities Purchase Agreement, in the section headed "Compliance," the Company represented and warranted that:

**"Neither the Company nor any Subsidiary (i) is in default under or in violation of (and no event has occurred that has not been waived that, with notice or lapse of time or both, would result in a default by the Company or any Subsidiary under), nor has the Company or any Subsidiary received notice of a claim that it is in default under or that it is in violation of, any indenture, loan or credit agreement or any other agreement or instrument to which it is a party or by which it or any of its properties is bound (whether or not such default or violation has been waived)."**

g.       The Securities Purchase Agreement further provided that the representations, warranties, agreements and covenants contained herein **shall survive the Closing and the delivery of the Securities**. (Section 6.10)

h.       Regarding attorney's fees, Section 6.9 of the Securities Purchase Agreement provided that: "If either party hereto shall commence a Proceeding to enforce any provisions of a Transaction Document, then

the prevailing party in such Proceeding shall be reimbursed by the other party for its reasonable attorneys' fees and other costs and expenses incurred with the investigation, preparation and prosecution of such Proceeding."

## CAUSES OF ACTION

### As And For A First Cause of Action
**(Breach of Contract)**
**(Against RGS)**

40. Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if set forth fully herein.

41. The parties entered into the Securities Purchase Agreement, pursuant to which Defendants issued the shares and warrants to Plaintiffs.

42. Plaintiffs fulfilled all their obligations under the Securities Purchase Agreement and fully paid Defendants the amount due thereunder.

43. The Securities Purchase Agreement contained the express warranty in Section 3.1(j) providing that since **the date of the latest audited financial statements included within the SEC Reports, expect as specifically disclosed in the SEC Reports there has been no event, occurrence or development that has had or that would reasonably be expected to result in a Material Adverse Effect.**

44. RGS materially breached this warranty as there were several adverse financial and operational developments that were not disclosed in the SEC Reports or the Securities Purchase Agreement that had or would reasonably have been expected to have a material adverse effect on the Company's operations, business or financial condition.

45.     Specifically, as set forth in Paragraph 31 above, the severe increase in operating losses to $28.4 million for the three months ending June 30, 2014, the poor commercial segment performance, i.e., losing $21.8 million from operations for such three  month period and experiencing a negative gross margin, the impairment of goodwill and other asset impairment of in excess of $18.8 million, the default under its obligations with Silicon Valley Bank, the  Company's low cash balance of $1.7 million, the significant increase in total current liabilities to $40.6 million, a 19% reduction of workforce, and the replacement of RGS's CEO are, inter alia, indisputably facts that "would reasonably be expected to have a material and adverse effect on the results of operations, assets, business or condition (financial or otherwise)" of RGS.

46.     As reported in the Form 10-Q and 8-K filings, these events all occurred during RGS's second fiscal quarter, and therefore necessarily existed prior to July 9, 2014, the closing of the Private Placement.

47.     It strains credibility that none of the foregoing events contained in Paragraph 31 above – all reported in RGS's second quarter SEC filings – were known by the Company at the time of the closing of the Private Placement on July 9, 2014, after the end of the second quarter on June 30, 2014.  In any event, the foregoing representations and warranties set forth in paragraph 39 were false and misleading when made.

48.     The representations and warranties contained in Section 3.1(j)(ii)  were also breached because RGS had incurred liabilities of the type required to have been disclosed and, to Plaintiff's knowledge, outside the ordinary course of business consistent with past practice, including $3.0 million of borrowings under its line of credit and an

additional $10.1 million of current liabilities, each as disclosed in its second quarter SEC Filings.

49.     The representations and warranties contained in Section 3.1(t) were also breached as, among other things, the Company was in default under its obligations with its bank, Silicon Valley Bank, which enabled the bank to demand that its indebtedness be repaid and realize on its collateral, the Company had current liabilities of $40.6 million, there was a goodwill and other asset impairment of $18.8 million, the Company incurred a $28.4 million loss from operations for the three months ended June 30 , 2014 and the Company had limited cash resources of $1.7 million as of June 30, 2014, all as disclosed in its second quarter SEC Filings.

50.     The representation and warranty contained in Section 3.1(m) of the Securities Purchase Agreement was also breached as the Company was in default under its obligations with its bank, Silicon Valley Bank, as disclosed in its second quarter SEC Filings.

51.     The representations and warranties contained in Section 3.1(ff) was also breached for , among other things, the reasons set forth in paragraphs 48, 49 and 50 above.

52.     Defendants breached the implied duty of good faith and fair dealing owed to Plaintiffs.

53.     As a result of Defendants' material breaches of the Securities Purchase Agreement, Plaintiff Smithline sustained damages of  approximately $87,972 and Plaintiff Midsummer suffered damages of approximately $84,802, in each case, plus interest accrued thereon, and reasonable attorney's fees.

### As And For A Second Cause of Action
#### (Common Law Fraud and Fraud in the Inducement)
#### (Against All Defendants)

54.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if set forth fully herein.

55.     Defendants misrepresented the financial and operational health of RGS and materially omitted facts about RGS's financials and operational events in each of Defendants' public press releases, oral communications with Plaintiffs and a Powerpoint Presentation sent to Plaintiffs before signing the Securities Purchase Agreement, as set forth in Paragraphs 21 through 30 above.

56.     The picture depicted of RGS was materially false and known to be materially false by Defendants.

57.     Plaintiffs were fraudulently induced into entering the contract by Defendants' public press releases, its oral representations and representations set forth in the Securities Purchase Agreement and/or the Powerpoint Presentation.

58.     The true picture of RGS was soon made available in RGS's SEC filings for the second quarter ending June 30, 2014, before the closing of the Private Placement on July 9, 2014, as set out in Paragraph 31 above.

59.     After Plaintiffs entered into the Securities Purchase Agreement, the Chief Executive Officer and Chief Financial Officer resigned and/or were replaced by the Company.

60.     Defendants made the misrepresentations and material omissions for the purpose of inducing Plaintiffs to rely upon such misrepresentations and material omissions to buy RGS securities.

61.     Defendants were in serious need of liquidity and required investors to supply RGS with capital.

62.     Plaintiffs reasonably relied on Defendants' misrepresentations or material omissions.

63.     As a result of Defendants' fraud, Plaintiff Smithline sustained damages of approximately $87,972 and Plaintiff Midsummer suffered damages of approximately $84,802, in each case, plus interest accrued thereon, and reasonable attorney's fees.

### As And For A Third Cause of Action
#### (Negligent Misrepresentation)

64.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if set forth fully herein.

65.     Defendants had a duty to give correct information to Plaintiffs because of their superior access to confidential information regarding RGS's financial and operational state.

66.     Defendants made false representations regarding RGS's financial and operational health that they knew were incorrect, as evidenced by the second quarter SEC filing disclosures for the second quarter ending June 30, 2014, outlined above in Paragraph 31.

67.     Information supplied in representations was known by Defendants to be desired by Plaintiffs for the sole purpose of investing, collectively, approximately $700,000.

68.     Plaintiffs intended to rely and act upon Defendants' public press releases, oral representations and representations set forth in the Powerpoint presentation, and Defendants' representations in the Securities Purchase Agreement.

69.     Plaintiffs reasonably relied Defendants' representations to their detriment.

70.     Plaintiff Smithline sustained damages of approximately $87,972 and Plaintiff Midsummer suffered damages of approximately $84,802, in each case, plus interest accrued thereon, and reasonable attorney's fees.

**As And For A Fourth Cause of Action**
**(Attorney's Fees)**

71.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if set forth fully herein.

72.     Pursuant to Section 6.9 of the Securities Purchase Agreement: "[i]f either party hereto shall commence a Proceeding to enforce any provisions of a Transaction Document, then the prevailing party in such Proceeding shall be reimbursed by the other party for its reasonable attorneys' fees and other costs and expenses incurred with the investigation, preparation and prosecution of such Proceeding."

73.     Plaintiffs have incurred, and continue to incur, attorneys' fees and expenses in their efforts to enforce their rights.

74.     Defendants, therefore, are responsible to Plaintiffs for all of their attorneys' fees and other costs and expenses incurred by Plaintiffs in an amount to be determined at the end of this proceeding.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment against Defendants, and in favor of Plaintiffs, as follows:

a.      On the First, Second and Third Causes of Action, compensatory damages in the amount of approximately $87,972 for Plaintiff Smithline and approximately $84,802 for Plaintiff Midsummer, in each case, plus interest accrued thereon;

   b.      On the Fourth Cause of Action, Plaintiffs' reasonable attorney's fees

           pursuant to the Securities Purchase Agreement;

   c.      All other costs in initiating this action; and

   d.      Such other and further relief as the Court deems just and equitable.

Dated: New York, New York
       December 5, 2014

                              SICHENZIA ROSS FRIEDMAN FERENCE LLP

                          By: _____
                                  Sameer Rastogi, Esq.
                              61 Broadway, 32nd Floor
                              New York, New York 10006
                              (212) 930-9700

                              *Attorneys for Plaintiffs Richard L. Smithline and*
                              *Midsummer Small Cap Master, Ltd.*